IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **COOPER,** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:22-cv-00857-JMC |
| **MR. TIMMINS et al,** | | |
| | * | |
| *Defendants.* | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Ms. Cooper ("Plaintiff") commenced this retaliation case under the Fair Housing Act ("FHA") on April 8, 2022, and the Court granted Plaintiff's motion for leave to proceed in forma pauperis (ECF No. 2) on April 15, 2022. (ECF. No. 3). Plaintiff is requesting damages and injunctive relief exceeding one million dollars for actions committed by employees of the Housing Authority of Baltimore City ("HABC") in retaliation for Plaintiff filing suit in 2015 against HABC employee Doug Hussey. (ECF No. 1 p. 18).[1] Specifically, Plaintiff has filed suit against ten HABC employees in their individual capacities. Presently before the Court is Defendants' Motion to Dismiss or in the Alternative Motion for Judgment (ECF No. 47),[2] Plaintiff's Motion to Amendment (ECF No. 62),[3] and Defendants' Reply Memorandum in Further Support of Motion to Dismiss, Opposition to Motion to Amend Complaint, and Request to Strike the Record of

---

[1] When the Court cites to a specific page, the Court is referring to the page numbers located in the electronic filing stamp provided at the top of every electronically filed document.

[2] This Motion is brought on behalf of all Defendants except Tiffany White ("T. White") and Renee Frazier ("Frazier"). *Id.* at p. 1 n.1. Defense counsel asserts that Defendants T. White and Frazier were not properly served with summons. *Id.* As will be further explained below, the arguments presented in the pending Motion brought by the properly served Defendants will apply with equal force to Defendants T. White and Frazier.

[3] This is Plaintiff's second motion requesting leave to amend her complaint. The Court will refer to this Motion in accordance with Plaintiff's titling.

Unauthorized Pleadings (ECF No. 65).   Additionally, the Court has considered Plaintiff's Response to Motion to Dismiss (ECF No. 63). No hearing is necessary.  Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, Defendants' Motion to Dismiss (ECF No. 47) is GRANTED and Plaintiff's case is DISMISSED without prejudice, Plaintiff's Motion to Amendment (ECF No. 62) is DENIED, and Defendants' Request to Strike is DENIED AS MOOT.

## I.    BACKGROUND

Before addressing the underlying allegations of Plaintiff's case, the Court must address the overwhelming filings that have occurred since the case's inception.  Plaintiff filed her Complaint on April 8, 2022.  (ECF No. 1).  Thereafter, on April 22, 2022, Plaintiff filed a "supplement" to her Complaint.  (ECF No. 4).  It was not until August 22, 2022, that Plaintiff motioned this Court for leave to amend her Complaint to add Defendants T. White and Frazier.[4]  (ECF No. 29). Although Defendants opposed the August 22, 2022 motion to amend, this Court granted Plaintiff leave to amend on August 30, 2022, through a Letter Order.  (ECF No. 34).  The Court found that Plaintiff was not seeking leave to amend in bad faith, and such an amendment to add two defendants would not be prejudicial.  *Id.*  However, in its August 30, 2022 Letter Order, the Court reminded Plaintiff of her duty to abide by the Court's Local Rules moving forward, and the Court instructed Plaintiff regarding the requirements of Local Rule 103.6 (Amendment of Pleadings). *Id.*

On September 13, 2022, Plaintiff filed her Amended Complaint (ECF No. 36), but she did not adhere to the Court's Local Rules for filing an amended complaint.  To clarify the docket, and in fairness to Defendants, the Court issued a Letter Order on September 14, 2022, stating that the

---

[4] Plaintiff was beyond the time in which she could amend as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1).

operative complaint in this case was the original Complaint (ECF No. 1) and Plaintiff's Amended

Complaint (ECF No. 36) to the extent it added Defendants T. White and Frazier.  (ECF No. 38).

The Court further clarified in its September 14, 2022 Letter Order that it was striking all material

in the Amended Complaint that went beyond adding Defendants T. White and Frazier.  *Id.*

Although the Court issued the Letter Order to bring clarity to the docket and provide clear

indication to Defendants as to which documents they were required to respond, Plaintiff proceeded

to file four supplements to her Amended Complaint within hours of the Court's September 14,

2022 Letter Order.[5]  For the purpose of determining the pending Motion to Dismiss, the Court will

adhere to its September 14, 2022 Letter Order and consider only Plaintiff's Complaint (ECF No.

1) and her Amended Complaint (ECF No. 36) to the extent it adds Defendants T. White and

Frazier.

The Court will now delineate, as best it can, the allegations Plaintiff sets forth in her

Complaint and Amended Complaint.  "At the motion to dismiss stage, the Court takes the

allegations of the [Amended Complaint] as true, . . . and [it] construes any disputed allegations in

the light most favorable to the plaintiff . . . ."  *Krell v. Queen Anne's Cnty.*, No. JKB-18-637, 2018

WL 6523883, at *2 (D. Md. Dec. 12, 2018) (other citations omitted).

Defendants are purported to have been HABC employees at all times relevant to the case

*sub judice*.  In 2019, Plaintiff lived in the Mannasota Manor Apartments.  (ECF No. 1 at ¶ 1).  Due

to ongoing disputes with the property manager, Defendant Erin Holley informed Plaintiff that

Plaintiff had to relocate.  *Id.* at ¶ 4.  Despite Plaintiff's possession of a voucher that allegedly

---

[5] Plaintiff has riddled the docket for this case with at least a dozen premature or improper filings, almost all of which either focus on reiterating the allegations made within her initial Complaint, assert allegedly suspicious activity regarding her personal computer files disappearing, or provide unverified documents without any explanation of their significance. (ECF Nos. 21, 22, 28, 32, 33, 37, 40, 41, 42, 43, 52, 53, 64).

permits Plaintiff to move anywhere within the United States, Defendant Holley informed Plaintiff that the HABC would not pay to relocate Plaintiff.  *Id.* at ¶¶ 5–6.  Plaintiff's situation was then turned over to Defendant Christine Westhook.  *Id.* at ¶ 6.  Plaintiff applied to move to Bainbridge of Federal Hill, but Defendant Frazier convinced the staff of that apartment to decline Plaintiff's application.  (ECF No. 36 at p. 3).  Defendant Frazier's explanation for his[6] actions was that the HABC would not pay the amount of money Bainbridge of Federal Hill would charge.  *Id.* Thereafter, Plaintiff applied for The Metropolitan Apartments, and the HABC approved that apartment without hesitation.  (ECF No. 1 at ¶ 7).  Defendant Timmins claims to have conducted an inspection on this new apartment.  *Id.*  After several scheduling conflicts and hostile interactions with other unnamed HABC employees, Plaintiff moved into The Metropolitan Apartments on March 6, 2020. *Id.*  at ¶¶ 8–17.

Upon moving into her new apartment, Plaintiff discovered a plethora of maintenance issues and began to have difficulty breathing.  *Id.* at ¶ 18.  Furthermore, Plaintiff noticed that someone was continuously burglarizing her new apartment—without Plaintiff catching them in the act —to steal items such as food and her favorite workout DVD.  *Id.* at ¶ 19.  The unknown intruders would take the water from Plaintiff's faucet and pour it into any liquid containers they could find in Plaintiff's refrigerator.  *Id.*  Furthermore, staff at her new apartment would lock her vehicle inside the apartment's parking lot, thereby forcing Plaintiff to walk everywhere.  *Id.*  In July 2020, Plaintiff finally contacted the HABC and emailed Defendant Corliss Alston regarding an inspection of her apartment.  *Id.* at ¶ 20.  Plaintiff then emailed Defendant Alston in October 2020 regarding an annual inspection, and Defendant Alston forwarded the email to Defendant Loher. *Id.* at ¶ 22. Because the HABC was not responding to Plaintiff, Plaintiff contacted the Baltimore

---

[6] In her filings, Plaintiff has switched between referring to Defendant Frazier as "he" and "she."

City Health Department ("BCHD"), and the BCHD sent inspector Michael Crooks to Plaintiff's apartment in either November or December of 2020. *Id.* at ¶ 24. Inspector Crooks informed Plaintiff that the apartment had legionnaires disease and that the foul odor Plaintiff experienced was caused by formaldehyde. *Id.*

Plaintiff contacted the HABC on January 21, 2021, to discuss the results of Inspector Crooks inspection. *Id.* at ¶ 26. Around midnight on January 29, 2021, Defendant Rarslen Lyons called Plaintiff while Defendant Lyons was drunk, and Defendant Lyons requested that Plaintiff send Plaintiff's notice to vacate to the HABC. *Id.* at ¶ 27. After more delays and poor communication between Plaintiff and Defendants, Plaintiff moved into Centerpoint Apartments on April 30, 2021. *Id.* at ¶¶ 28–37. In August 2022, Defendant T. White sent Plaintiff an email with documents to complete. (ECF No. 36 at pp. 9–10). After Plaintiff completed the documents, Plaintiff began experiencing issues with her computer. *Id.*

Plaintiff alleges eleven retaliatory actions performed by Defendants: (1) failing to allow Plaintiff to move to the apartment of her choice, (2) failing to follow proper protocol during the lease signing for The Metropolitan Apartments, (3) failing to conduct a timely moving process, (4) purposely delaying Plaintiff's move from an unhealthy location, i.e., The Metropolitan Apartments, (5) failing to conduct the initial inspection of The Metropolitan Apartments, (6) failing to conduct a virtual inspection of the Metropolitan Apartments, (7) failing to conduct an air and water quality test, (8) the HABC staff constantly displayed verbal misconduct towards Plaintiff, (9) the HABC staff was hostile towards Plaintiff, (10) the HABC staff made Plaintiff feel physically threatened, and (11) the HABC failed to pay for Plaintiff to relocate from the Mannasota Manor Apartments. *Id.* at pp. 16–17. Plaintiff alleges that because of these eleven retaliatory actions, Plaintiff has suffered, amongst other injuries, loss of hair, leather skin, and bleeding from

her rectum. *Id.* at p. 17. Plaintiff claims that the retaliatory actions were motivated by Plaintiff's

filing of a sexual harassment complaint against HABC employee Doug Hussey in 2015. *Id.* at p.

18.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(6) Failure to State a Claim

"Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a

'short and plaint statement of the claim showing that the pleader is entitled to relief.'" *Love v.*

*Rumgay*, No. RDB-13-1402, 2016 WL 1028001, at \*4 (D. Md. Mar. 15, 2016) (quoting Fed. R.

Civ. P. 8(a)(2)). "Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal

of a complaint if it fails to state a claim upon which relief can be granted." *Love*, 2016 WL

1028001, at \*4. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to

resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court of the United States' opinions in *Bell Atl. Corp. v. Twombly*, 550 U.S.

544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 544 (2007), "require that complaints in civil actions

be alleged with greater specificity than previously required." *Walters v. McMahen*, 684 F.3d 435,

439 (4th Cir. 2012) (other citation omitted). When ruling on a Rule 12(b)(6) motion to dismiss, a

court must apply "[t]wo working principles . . . ." *Iqbal*, 556 U.S. at 678. First, although a court

must accept as true all the factual allegations contained in a complaint, any legal conclusions that

are drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice[]" to

plead a claim). Second, a complaint shall be dismissed if it does not allege a "plausible claim for

relief . . . ." *Id.* at 679. "A claim has facial plausibility when the pleaded factual content allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Id.* at 663 (other citation omitted).  In determining whether a plaintiff has stated a plausible claim
for relief, a court must "draw on its judicial experience and common sense."  *Id.* at 679 (other
citation omitted).  "*Pro se* pleadings must, of course, be liberally construed."  *Noonan v. Couper*,
No. JFM-09-1768, 2009 WL 3423841, at *1 (D. Md. Oct. 23, 2009).

Defendants style their Motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in
the alternative, for summary judgment under Fed. R. Civ. P. 56.  "A motion styled in this manner
implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure."  *Pevia
v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020).  The Court has "complete discretion to
determine whether or not to accept the submission of any material beyond the pleadings that is
offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion,
or to reject it or simply not consider it."  *Id.* at 626 (other citation omitted).  "Ordinarily, summary
judgment is inappropriate where the parties have not had an opportunity for reasonable discovery."
*Id.* (other citations and internal quotations omitted).  Because the Court finds that Plaintiff's
Complaint (ECF No. 1) and Amended Complaint (ECF No. 36) do not plausibly state a claim for
relief, the Court will decline to consider matters outside the pleadings.

## III.    ANALYSIS

### A.  Defendants' Motion to Dismiss

Plaintiff brings her case under 42 U.S.C. 3613 and Section 818 of the FHA.  *See* (ECF No.
1 at p. 5).  The FHA prohibits discrimination "in the terms, conditions, or privileges of sale or
rental of a dwelling, or in the provision of services or facilities in connection therewith, because
of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b)).  The FHA
also makes it unlawful to retaliate against someone based on their exercise of rights protected by

the FHA.  *See* U.S.C. § 3617.  A private person may seek to enforce this provision by filing a

complaint with the Secretary of the United States Department of Housing and Urban Development

and proceeding through the administrative process, 42 U.S.C. § 3610, or by filing a civil action in

either federal district court or state court, 42 U.S.C. § 3613.  Unlike employment discrimination

claims under Title VII, there is no requirement to exhaust administrative remedies before filing a

civil suit under the FHA.  *Id.*

### 1.  Plaintiff Has Failed to State a Claim for Retaliation[7]

Plaintiff has failed to state a claim for retaliation under the FHA against the ten individual

Defendants in their individual capacities.  Under the FHA, it is "unlawful to coerce, intimidate,

threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having

exercised or enjoyed . . . any right granted or protected by [the FHA]."  42 U.S.C. § 3617.  "To

state a claim for retaliation under 42 U.S.C. § 3617 of the FHA, [a plaintiff] must establish that (1)

she was engaged in protected activity; (2) [defendant] was aware of that activity; (3) [defendant]

took adverse action against her; and (4) a causal connection existed between the protected activity

and the asserted adverse action."  *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th

Cir. 2016); *see also* 24 C.F.R. § 100.400(c)(5) ("Conduct made unlawful under this section

includes . . . [r]etaliating against any person because that person has made a complaint, testified,

---

[7] Included in Plaintiff's Complaint is Plaintiff's February 24, 2022 Housing Discrimination Complaint.  (ECF No. 1 at p. 22).  Although styled as a discrimination complaint, this document alleges only retaliation under Section 818 of the FHA.  At no point in her pleadings does Plaintiff allege that Defendants' actions were based upon discriminatory intent directed towards a protected class to which Plaintiff belongs.  *See*  42 U.S.C. § 3604.  Defendants dedicate a portion of their Motion to Dismiss towards undermining a discrimination claim brought by Plaintiff.  (ECF No. 47 at p. 9–10).  However, Plaintiff has not alleged discrimination based upon a protected class, nor has she addressed this aspect of Defendants' Motion in her Opposition (ECF No. 63).  *See Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 58 (D.D.C. 2003) (noting that "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded"), *affm'd* 389 F.3d 1291 (D.C. Cir. 2004).

assisted, or participated in any manner in a proceeding under the [FHA].").  "[R]etaliation claims brought pursuant to the FHA are analyzed under the same standards that are applied to retaliation claims brought under Title VII and other employment discrimination statutes . . . ."  *Hall v. Greystar Mgmt. Servs., L.P.*, 28 F. Supp. 3d 490, 495 (D. Md. 2014) (other citations omitted).  To maintain a retaliation claim, Plaintiff must "allege facts sufficient to show a causal connection— namely, that the reason [Defendants] took the actions [they] did was because of [Plaintiff's] protected activity."  *Young v. Lake Royale Prop. Owners Ass'n*, NO. 5:19-CV-483-FL, 2021 WL 3853258, at *5 (E.D.N.C. Aug 27, 2021) (quoting *Hall*, 637 F. App'x at 98).

Regarding the protected conduct element of a retaliation claim, Plaintiff asserts that Defendants retaliated against her because she "filed a[] 2015 Sexual Harassment Complaint in U.S. District Court against HABC Doug Hussey," and "HABC employees has some type of grudge towards [Plaintiff], relating to the 2015 'Sex for Repairs' Case."  (ECF No. 1 at pp. 10 & 18).[8] Plaintiff's pursuit of a lawsuit in 2015 constitutes a protected activity under the FHA.  *See* 24 C.F.R. § 100.400(c)(5).

Although Plaintiff can satisfy the first element for her retaliation claim, she fails to satisfy both the knowledge element and causation element.   Regarding knowledge on behalf of

---

[8]  In their Motion to Dismiss, Defendants recognize that Plaintiff perhaps claims that the alleged acts of Defendants were committed in retaliation for Plaintiff filing a complaint of race discrimination in 2018. (ECF No. 47-1 at p. 11). However, Plaintiff initially mentions this 2018 case only in passing: "In 2018 I filed a Complaint for Race Discrimination in the U.S. District Court. In that complaint, the Defendant spoke about attending a Trump Rally." (ECF No. 1 at ¶ 3).  Although designating a portion of her Complaint as "What did I do to cause HABC to retaliate against me?[,]" Plaintiff only alleges retaliation based on her 2015 case.  Even in the Housing Discrimination Complaint included in her Complaint, Plaintiff only alleges that Defendants were "retaliating against her because of a lawsuit she filed (circa September 22, 2015) . . . ."  (ECF No. 1 at p. 23).  In a handwritten portion of her Complaint, Plaintiff asserts, "This case matter stems from a 2015 case . . . ."  (ECF No. 1-2 at p. 1).  Furthermore, Plaintiff's Opposition states, "this is the second complaint I filed against HABC.  First being in 2015 for the sex for repairs case against HABC Doug Hussey."  (ECF No. 63 at p. 4).  Plaintiff's Opposition also states, "A race discrimination complaint was filed in 2018 against Bozzuto Incorporated."  *Id.* at p. 5.  The Complaint lacks any indication that Defendants would retaliate against a corporation without any apparent connection to them or their employer.  Plaintiff has not alleged that her 2018 discrimination case is a basis for Defendants' retaliatory actions, nor is there anything in the pleadings indicating that it is such a basis.  Plaintiff alleges retaliation based upon only her 2015 lawsuit.

Defendants, Plaintiff's Complaint and Amended Complaint are entirely devoid of any allegation that these Defendants knew of Plaintiff's 2015 lawsuit.

Furthermore, Plaintiff has failed to establish any causal connection between her alleged protected action and the allegedly retaliatory actions of Defendants. Plaintiff's first allegation of retaliatory action performed by Defendants is that Defendants refused to allow Plaintiff to move to "an apartment of [her] choice." (ECF No. 1 at p. 16). This alleged refusal occurred in November of 2019. *Id.* at p. 9–10 (Plaintiff claims that Defendant Holley notified Plaintiff the day before "Thanksgiving Day 2019" that Plaintiff would have to move from the Mannasota Manor Apartments). Therefore, Plaintiff has alleged retaliatory action beginning approximately four years after Plaintiff undertook protected action. "[A] court will not infer a causal link based on temporal proximity alone unless the adverse action occurred 'very close' to, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S. Ct. 1508, 149 L.Ed.2d 509 (2001), or 'shortly after,' *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), the defendant became aware of the protected activity." *Hall*, 637 F. App'x at 99. Such a lack of temporal proximity undermines Plaintiff's retaliation claim, especially given the lack of any additional factual allegations supporting the retaliation claim. *See, e.g.*, *id.* (a delay of ten months between protected action and allegedly retaliatory conduct defeated claim for retaliation absent additional allegations establishing causation); *Clark Cnty. Sch. Dist.*, 532 U.S. at 274 ("action taken (as here) 20 months later suggests, by itself, no causality at all."); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir.

2001) ("A six-month lag is sufficient to negate any inference of causation."); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (four-month period insufficient).[9]

"Plaintiff[] fail[s] to point to any factual allegations that would give rise to an inference of retaliatory causation beyond bare assertions devoid of further factual enhancement." *Young*, 2021 WL 3853258, at *5 (other citation omitted). The Court's reasoning applies with equal force to Plaintiff's claims against unserved Defendants T. White and Frazier. Accordingly, Defendants' Motion to Dismiss (ECF No. 47) is GRANTED, and Plaintiff's case against Defendants—whether served or not—is DISMISSED without prejudice.

### 2. FHA Statute of Limitations

Because the Court concludes that Plaintiff has failed to state a plausible claim for relief against Defendants, it does not consider whether Plaintiff's claims against Defendants are barred by the FHA's two-year statute of limitations.[10] *See* 42 U.S.C. § 3613(a)(1)(A) (an individual must commence an FHA action "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice."); *Young*, 2021 WL 3853258, at *6 n.9 (declining to address statute of limitations issue because the plaintiffs failed to state a plausible claim for retaliation).

### B. Plaintiff's Second Motion to Amend Her Complaint

Plaintiff has again motioned this Court for leave to amend her Complaint. Specifically, Plaintiff is now alleging that her Complaint was meant to be against the HABC, not the ten named

---

[9] Even if the Court accepts Plaintiff's 2018 lawsuit against Bozzuto Incorporated as a protected action that caused Defendants to undertake retaliatory action, at least eleven months would have elapsed between that case and the first alleged occurrence of retaliatory action. Caselaw strongly indicates that this elapse of time would undermine Plaintiff's retaliation claim, as well.

[10] Similarly, the Court will not address Defendants' argument regarding qualified immunity.

Defendants individually.[11]  Plaintiff is unable to amend as a matter of right because she failed to amend within the requisite timeframe.  *See* Fed. R. Civ. P. 15(a)(1).  When the time to amend as a matter of right expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "[L]eave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile."  *Matrix Cap. Mgmt. Fund, LP, v. BearingPoint, Inc.*, 576 F.3d 172, 1093 (4th Cir. 2009).  The Court will deny Plaintiff's Motion to Amendment (ECF No. 62) on two grounds: prejudice and futility.

In its August 30, 2022 Letter Order and Opinion (ECF No. 34) granting Plaintiff's Motion for Amendment to Add Defendants (ECF No. 29), this Court reminded Plaintiff of her responsibility to comply with this Court's Local Rules.  (ECF No. 34 at p. 2).  Local Rule 103.6(c) states that the moving party "shall file and serve (1) a clean copy of the amended pleading and (2) a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type."  Plaintiff failed to adhere to the Local Rules in filing her first Amended Complaint (ECF No. 36), and Plaintiff has again failed to adhere to the Local Rules in filing her pending Motion to Amendment (ECF No. 62).  "Plaintiff's repeated failure to comply with Local Rule 103.6 – even after explicit instruction from the [C]ourt – is sufficient to deny the pending motion."  *Jassie v. Mariner*, No. DKC 15-1682, 2016 WL 3218725, at *4 (D. Md. June 10, 2016) (finding that *pro se* plaintiff's repeated failures to adhere to local Rule 103.6 amounted to prejudice sufficient to deny motion to amend) (other citations omitted).  As recognized by Defendants, Plaintiff's pending motion fails to provide

---

[11]  Plaintiff's opening page to her Motion to Amendment raises a question as to whether Plaintiff is seeking to amend her Complaint in this Court or her complaint before HUD.  For the purposes of this Opinion, the Court will assume the former.

"any indication of what constitutes the new material, what changed from the last operative complaint, or numbering of paragraphs." (ECF No. 65 p. 2). Therefore, Plaintiff's failure to observe the Local Rules is prejudicial, and her Motion will be denied. "To this point, [Plaintiff] has been given three bites at the apple – the original complaint, the amended complaint, and an opportunity to move for leave to amend – and there is no reason to think that a [fourth] bite would bear fruit." *Jassie*, 2016 WL 3218725, at *4 (other citations and internal quotations omitted).

Lastly, regarding futility, the Court has already determined that Plaintiff has failed to state a claim against Defendants in their individual capacities because she has failed to satisfy the causal element of a retaliation claim. Plaintiff's Motion to Amendment (ECF No. 62) merely asserts that she intended to bring her claim against that HABC, and it reiterates the allegations she has asserted previously. Without more, Plaintiff fails to establish a causal link between her protected action performed in 2015 and the allegedly retaliatory actions of the HABC performed through its employees beginning in 2019. Therefore, granting leave for Plaintiff to amend her Complaint to clarify that she is suing the HABC would be futile, and Plaintiff's Motion to Amendment is DENIED.[12]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or in the Alternative Motion for Judgment (ECF No. 47) is GRANTED and Plaintiff's case is DISMISSED without prejudice, Plaintiff's Motion to Amendment (ECF No. 62) is DENIED, and Defendants' Request to Strike is DENIED AS MOOT. A separate order follows.

Date: <u>December 29, 2022</u>

_____/s/_____
J. Mark Coulson
United States Magistrate Judge

---

[12] Defendants request this Court to strike the record of Plaintiff's unauthorized pleadings. Because the Court is granting Defendants' Motion to Dismiss and denying Plaintiff's Motion to Amendment, this request is moot.